UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NIGEL SAUNDERS,

         Plaintiff,

 -against-             1:17-CV-0765 (LEK/CFH)

PATRICIA RYAN, *et al.*,

         Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On July 13, 2017, pro se plaintiff Nigel Saunders commenced this action against defendants Patricia Ryan, Jason Russel, and Tai Arnold, employees of the State University of New York at Empire State College (the "University"). Dkt. No. 1 ("Complaint"). Plaintiff later filed an amended complaint that, along with the statement of facts included in the initial Complaint, Compl. at 12–13 ("Statement of Facts"), became the operative pleading, Dkt. No. 20 ("Amended Complaint").[1] Now before the Court is Defendant's second motion to dismiss this action for a lack of personal jurisdiction, deficient service of process, and failure to state a claim, brought pursuant to Rules 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure. Dkt. No. 24 ("Second Motion"); see also Dkt. No. 24-1 ("Durand Declaration"). Plaintiff failed to

---

 [1] Although the Amended Complaint filed with the Court does not contain Plaintiff's Statement of Facts, it does make reference to "Exhibit 1," which the Court interprets as referring to the Statement of Facts. Id. at 2, 6, 10. Also, subsequent submissions by Defendants indicate that the Statement of Facts was served along with the Amended Complaint, implying that Plaintiff intended to incorporate both documents into his pleadings. See Dkt. No. 24-1 ¶¶ 13–14; Dkt. No. 24-8. Therefore, bearing in mind Plaintiff's pro se status, the Court will treat both documents as part of Plaintiff's operative pleadings.

timely oppose the Second Motion. For the reasons that follow, Defendant's Second Motion is granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background

The facts in this section are drawn from Plaintiff's pleadings, and are taken as true for the purpose of deciding Defendant's Second Motion. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

Plaintiff enrolled in the University's Labor and Policy Studies Master's degree program sometime in the summer of 2008.[2] Statement of Facts at 12. In December 2009, Plaintiff brought a successful suit against the University before the New York Division of Human Rights ("DHR"), alleging discrimination based on Plaintiff's "medical history of diabetes and hypertension." Id. As a result of that suit, Plaintiff "was awarded a monetary amount and allowed to continue the [Master's] course with the assurance that several members of the college staff would assist [him] in completing [his] courses." Id.

As of July 18, 2014, Plaintiff had completed nearly all of his academic requirements for graduation, "with the exception of the Modes of Inquiry course and a final paper" for that course. Id. Plaintiff had previously failed Modes of Inquiry, a required Master's level course taught by

---

[2] Although the Statement of Facts does not state when Plaintiff's enrollment began, the Court infers—based on the academic deadlines that are mentioned elsewhere in that document—that Plaintiff must have commenced his studies sometime in or around July 2008. Statement of Facts at 12.

Russel, on three separate occasions. Id. Plaintiff alleges that many of his struggles with that course stem from Russel's failure to communicate in an effective and timely manner; any coursework Plaintiff submitted to Russel would not be returned with edits and corrections for a "very long time." Id. Plaintiff contends that Russel's behavior was retaliatory in nature, and that Russel "used his position as [Plaintiff's] mentor to make [Plaintiff's] college experience more difficult because of [Plaintiff's previous lawsuit]." Id.

One such failed communication occurred in the summer of 2014. Id. Although Plaintiff submitted a revised version of his final Modes of Inquiry paper to Russel on May 6, 2014, he received no response for multiple weeks. Id. Eventually, after a grade of "no credit" was posted to Plaintiff's transcript on July 11, 2014, Plaintiff sent Russel an email—copying Arnold, the University's Dean of Graduate Studies, and Ryan, the University's Director of Academics and Student Affairs—inquiring about his grade and attaching the previously-submitted paper. Id. Russel responded by withdrawing the "no credit" grade and advising Plaintiff to "seek assistance from a writing center . . . [the existence of which] was never disclosed to [Plaintiff] before." Id. Russel also informed Plaintiff for the first time that, in order to graduate from the University's Master's program, students must complete all of their academic requirements within six years. Id. At the time of Russel's email, Plaintiff's six-year deadline was set to expire less than a week later, on July 18, 2014. Id.

Plaintiff alleges that, after receiving Russel's July 11, 2014 email, he "visited the writing center several times." Id. However, Plaintiff had to cancel one appointment with the center—originally scheduled for July 15, 2014—"because of elevated blood pressure." Id.

3

Despite those visits, Plaintiff was unable to finish the required paper prior to the July 18, 2014 expiration of the University's six-year deadline. Id.

Plaintiff also visited a doctor on July 18, 2014 after "experiencing double vision because of [] hypertension." Id. The doctor prescribed Plaintiff with medication and provided him with a note that "verif[ied]" Plaintiff's illness and advised that Plaintiff should be granted "a month extension" to complete his course requirements. Id.

Plaintiff forwarded his doctor's note to Ryan and Arnold, along with a request that his course deadlines be extended for one month. Id. However, both Ryan and Arnold denied that request. Id. Plaintiff claims that, by denying his request and "going against an order from a licensed medical physician," Ryan and Arnold "retaliated against [him] because of [his] 2009 charge with [the] New York Division of Human Rights." Id.

### B. Procedural Background

After engaging in administrative proceedings before both the DHR and the New York State Office of Civil Rights, id. at 12–13, Plaintiff filed his initial Complaint on July 13, 2017. On September 12, 2017, Plaintiff submitted affidavits of service as to Ryan and Arnold. Dkt. No. 7. A similar affidavit was filed on October 2, 2017 signifying that service had also been accomplished as to Russel. Dkt. No. 8. However, all three affidavits indicated that, instead of serving a summons and the Complaint on Defendants, Plaintiff served them with copies of the filing order, a case management plan, and a consent form to proceed before a magistrate judge, among other documents. Id. at 1; Dkt. No. 7 at 1–2.

Defendants moved to dismiss Plaintiff's claims on October 11, 2017. Dkt. No. 10 ("First Motion"). They argued that, by failing to serve Defendants with a summons and a copy of the

4

Complaint, "Plaintiff failed to serve [Defendants] in accordance with Rule 4 . . . [meaning] the Court lacks personal jurisdiction over the [D]efendants." Dkt. No. 10-4 ("Memorandum") at 1. In the alternative, Defendants also argued that Plaintiff's Complaint failed to state a claim on which relief may be granted, and was therefore subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. at 8.

On February 15, 2018, the Court found that, though Plaintiff failed to properly serve a summons and the Complaint on Defendants, "the record includes evidence that Plaintiff made a good-faith effort to serve Defendants by delivering certain documents to the Saratoga County Sheriff's Office" on July 25, 2017. Dkt. No. 16 ("February Order") at 2 (citing Dkt. No. 10-2). Therefore, because a dismissal of Plaintiff's Complaint would preclude re-filing on statute of limitations grounds, and because Defendants would not be prejudiced by an extension of the service deadline, the Court granted Plaintiff an additional thirty days to properly serve Defendants in compliance with Rule 4. Id. at 3–4. The Court further stipulated that, if he so chose, Plaintiff could "file and serve an amended complaint rather than . . . the original Complaint" on Defendants. Id. at 4. However, the Court advised that any amended complaint must "clearly identify the specific claims against Defendants that entitle [Plaintiff] to relief." Id.

On March 8, 2018, within the thirty-day period set out by the February Order, Plaintiff filed a letter requesting an extension of time. Dkt. No. 17. That request was granted on March 9, 2018, and Plaintiff's service deadline was extended to April 18, 2018. Dkt. No. 18.

On April 24, 2018, Plaintiff filed another letter with the Court, indicating that on April 16, 2018, he sent summonses and copies of the Amended Complaint and Statement of Facts to both the Buffalo County Sheriff's Office and the Saratoga Springs County Sheriff's

5

Office for service on the Defendants. Dkt. No. 19 ("April Letter") at 1. Attached to the April Letter were photocopies of the Certified Mail Receipts Plaintiff received from the U.S. Postal Service in reference to those mailings, both of which are dated April 16, 2018. Id. at 2. Soon thereafter, on May 9, 2018, affidavits of service as to each of the Defendants were filed. Dkt. Nos. 21, 22, 23. They indicate that Ryan, Arnold, and Russel were actually served, respectively, on April 23, 25, and 30, after the Court's April 18, 2018 deadline. Id.

In a separate filing, Plaintiff also submitted to the Court a copy of the Amended Complaint served on Defendants, which consists of three separate versions of a form civil rights complaint—one each for Ryan, Russel, and Arnold. Am. Compl. Construed liberally, the Amended Complaint asserts claims against all three Defendants for discrimination and retaliation in violation of both the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYHRL").[3] Id. at 3, 7, 11. In addition, the Amended Complaint asserts claims against Ryan and Arnold for "making a medical decision on [Plaintiff's] life without a medical degree or a New York license by over[r]uling a licen[s]ed doctor's order." Id. at 3, 11. Plaintiff requests compensatory and punitive damages, and that he "[b]e allowed to complete the courses towards [his] graduate degree." Id. at 4, 8, 12.

---

[3] Plaintiff's second claim actually reads "Retaliation—2009 Human Rights charge against Empire State College." Am. Compl. at 3, 7, 11. The Court interprets "2009 Human Rights" to refer to the NYHRL, and specifically to New York Executive Law § 296, *et seq.* Also, because Plaintiff's second claim is included within three form civil rights complaints which specifically name Ryan, Russel, and Arnold as defendants, the Court disregards Plaintiff's "against Empire State College" language and interprets his second claim as brought against the named Defendants.

In response, Defendants filed the Second Motion on May 11, 2018, requesting dismissal of the Complaint.[4] Second Mot. Defendants attached the Durand Declaration and a number of exhibits, all of which are reproductions of documents previously filed on the Docket. See Dkt. Nos. 24-2 to -8. In addition to "seek[ing] confirmation that the action is in fact dismissed" as a result of Plaintiff's alleged failure to timely accomplish service, Durand Decl. ¶ 10, Defendants contend that "[t]he amended complaint filed by [P]laintiff . . . does not cure the factual deficiencies in the original complaint," id. ¶ 11. Instead of describing those deficiencies in the Second Motion itself, however, the Durand Declaration makes reference to the Memorandum filed along with the First Motion. Id. ¶ 12. That Memorandum broadly argued, *inter alia*, that "the facts alleged in the . . . [C]omplaint do not support plausible causes of action" against the Defendants.[5] Mem. at 9. Plaintiff failed to timely oppose the Second Motion.

### III. LEGAL STANDARD

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006). On a motion to dismiss pursuant to Rule 12(b)(2)

---

[4] Although Plaintiff had filed the Amended Complaint by the time of Defendants' Second Motion, Defendants argue that the Court's service deadline had already expired at the time of the Amended Complaint's filing and service, such that Plaintiff's suit should have already been dismissed without further order from the Court. Durand Decl. ¶¶ 3–5. Defendants therefore characterize the Second Motion as requesting dismissal of the Complaint, rather than the Amended Complaint. Second Mot. at 1.

[5] Defendants' Memorandum also argued that "Plaintiff [] failed to allege any adverse actions taken by [] Russel within the statute of limitations." Mem. at 7. However, Defendants only make that argument with reference to the statute of limitations applicable to § 1983, id.; see also Durand Decl. ¶ 16 (citing to Mem. at 7), which is not listed as a cause of action in Plaintiff's Amended Complaint, Am. Compl. at 3, 7, 11. Therefore, the Court will not address that argument in this Memorandum-Decision and Order.

or 12(b)(5) for lack of personal jurisdiction or deficient service of process, the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 205, 206 (2d Cir. 2003). Plaintiff must meet this burden by making a prima facie case of proper service "through specific factual allegations and any supporting materials." Kwon v. Yun, No. 05-CV-1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006). "'A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.'" Soos v. Niagara County, 195 F. Supp. 3d 458, 463 (W.D.N.Y. 2016) (quoting Jackson v. City of New York, No. 14-CV-5755, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015)).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Though "when [a] plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally," McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (citing Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)), plausibility nonetheless requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678

(quoting Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks and alterations omitted).

IV.    **DISCUSSION**

   **A. Service of Process**

The law related to service of process and Rule 4(m) of the Federal Rules of Civil Procedure was discussed at length in the Court's February Order, Feb. Order at 2–3, and will not be restated here.

Plaintiff's most recent service-related difficulties are not identical to those that were the subject of the February Order. Previously, Plaintiff had failed to serve the correct documents on the Defendants. Id. at 2. Now, Plaintiff has served the proper documents, but has failed to complete service by the deadline established by the Court. Compare Dkt. No. 18 with Dkt. Nos. 21, 22, 23. Nonetheless, Plaintiff did, prior to the expiration of the Court's deadline, send the relevant documents to the Buffalo and Saratoga Springs Sheriff's Offices for service. Apr. Letter at 1. Therefore, taking into consideration Plaintiff's pro se status, the Court once again finds that, while Plaintiff has failed to accomplish perfect service of the Defendants in compliance with the Court's instructions, he has nonetheless made "a good-faith effort" to do so. Feb. Order at 2.

Additionally, the discretionary factors set out in Feingold v. Hankin, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003), once again weigh against dismissal for deficient service of process. "[F]orcing Plaintiff to re-file this action would lead to dismissal on statute of limitations grounds," Feb. Order at 3, "[D]efendant[s] had actual notice of the claims asserted in the

9

[C]omplaint," Feingold, 269 F. Supp. 2d at 277, and "the court can imagine no prejudice to [D]efendant[s] if Rule 4(m) relief is granted," Carroll v. Certified Moving & Storage, Co., LLC, No. 04-CV-4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005). The Court therefore finds that the "balance of equities tips in favor of" Plaintiff," id. at *3, and it will not dismiss Plaintiff's claims under Rules 12(b)(2) and/or (5) of the Federal Rules of Civil Procedure for untimely service of process.

**B. Merits of Plaintiff's Claims**

*1. ADA and NYHRL Claims Against Ryan, Russel, and Arnold*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "In order to establish a violation under the ADA, [] plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (citing Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998)). Disability discrimination claims brought pursuant to the NYHRL are governed by the same standard. See Rodal v. Anesthesia Grp. of Onondaga, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000))).

Defendants raise three arguments for dismissing Plaintiff's ADA and NYHRL claims, none of which address either the first or second prong of the Henrietta D. test. The Court will therefore assume, for the purposes of this Memorandum-Decision and Order, that Plaintiff has a qualifying disability and that Defendants are subject to the ADA.

First, Defendants argue that Plaintiff's claims should be dismissed because "the obligation to make reasonable accommodation does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." Mem. at 14 (quoting Hartnett v. Fielding Graduate Inst., 198 Fed. App'x 89, 92 (2d Cir. 2006)). In other words, Defendants would have the Court find that Plaintiff's requested accommodation—a one-month extension of the University's six-year deadline in order to finish his degree—is not mandated by the ADA because, instead of putting Plaintiff "on an even playing field with the non-disabled[,] it [would] authorize a preference" in Plaintiff's favor. Id. (quoting Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003)).

However, the Court will not, at this stage of the litigation, dismiss Plaintiff's ADA and NYHRL claims on those particular grounds. To do so would require the Court to assess the reasonableness of Plaintiff's requested accommodation in light of both the nature of Plaintiff's disability and the extent to which the accommodation would benefit Plaintiff in relation to other students. Indeed, that is precisely the inquiry undertaken in the opinions cited by Defendants, all of which occurred after discovery. See, e.g., Hartnett, 198 Fed. App'x at 92 (summary judgment); Felix, 324 F.3d at 107 (summary judgment); McInerney v. Rensselaer Polytechnic Inst., 977 F. Supp. 2d 119 (N.D.N.Y. 2013) (Rule 52(a) findings of fact and conclusions of law). Such an

inquiry would require far more evidence than is currently available on the record, and is better suited to a later stage of the litigation.

Second, Defendants contend that, because "[t]here is no individual liability under the [ADA]," Plaintiff cannot assert his claims for compensatory relief against Defendants as individuals. Durand Decl. ¶ 21; see also Mem. at 14. Defendants are correct that, "[i]nsofar as [Plaintiff] is suing the individual defendants in their individual capacities, [] Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials." Garcia v. State Univ. of N.Y. Health Scis. Ctr. of Brooklyn, 280 F.43d 98, 107 (2d Cir. 2001). However, Defendants' objection applies only to the ADA. The Second Circuit has held that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NY]HRL." Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995). Therefore, Plaintiff's ADA claims for damages against the Defendants in their individual capacities will be dismissed, but Plaintiff's NYHRL claims against the Defendants in their individual capacities survive Defendants' Second Motion.

Third, Defendants state that "the doctrine of sovereign immunity may bar any money damage suit against [Defendants] in their official capacities." Durand Decl. ¶ 22. "[T]he Eleventh Amendment establishes sovereign immunity from suit which may only be waived by a state or abrogated by Congress." Evanoff v. New York, No. 12-CV-726, 2013 WL 6181853, at *6 (W.D.N.Y. Nov. 25, 2013) (citing Schallop v. N.Y. Dep't of Law, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998)). With regard to Plaintiff's NYHRL claims, multiple courts in this Circuit have found that "[n]othing in the NYHRL statute provides for a waiver of the state's sovereign immunity, nor has the state waived its immunity with regard to suits in federal court alleging

violations of the NYHRL." Id. (citing Schallop, 20 F. supp. 2d at 391). Therefore, Defendants are correct that Plaintiff's NYHRL claims are barred insofar as they have been brought against Defendants in their official capacities.

The situation is much less clear with regard to Plaintiff's claims under the ADA, however. As Defendants note in the Durand Declaration, the Second Circuit recently remarked:

> [W]e note a growing fracture among the district courts in this Circuit in their approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA. . . . We express no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability.

Dean v. Univ. at Buffalo Sch. of Med. and Biomedical Scis., 804 F.3d 178, 194 (2d Cir. 2015) (footnote omitted). But short of observing the existence of this intra-Circuit split, Defendants do not discuss the merits of the competing approaches employed by the various district courts. Instead of advocating for the Court to find that sovereign immunity does bar Plaintiff's compensatory claims, Defendants simply state that such a finding "may" be justified . Without more substantive briefing on the issue, the Court will not decide such a thorny question. See Lyn v. Inc. Vill. of Hempstead, No. 03-CV-5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." (citation omitted)). Moreover, the doctrine of sovereign immunity has no impact on Plaintiff's ADA claims for injunctive relief against Ryan, Russel, and Arnold in their official capacities. Henrietta D., 331 F.3d at 287 ("The Eleventh Amendment . . . does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). Therefore, the

Court finds that Plaintiff's ADA claims for both compensatory and injunctive relief, as brought against Ryan, Russel, and Arnold in their official capacities, survive Defendants' Second Motion.

    *2. Retaliation Claims Against Ryan, Russel, and Arnold*

Section 12203(a) of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." "The Second Circuit has identified four elements of a prima facie case of retaliation: '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" Widomski v. State Univ. of N.Y. at Orange, 933 F. Supp. 2d 534, 547 (S.D.N.Y. 2013) (quoting Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002)). "The . . . NYHRL contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted).

Defendants raise multiple arguments—both in the Memorandum that was attached to the First Motion and in the Durand Declaration—in favor of dismissing Plaintiff's retaliation claims against Ryan, Russel, and Arnold. First, in their Memorandum, Defendants state that Plaintiff's retaliation-based allegations constitute "'conclusion[s] . . . not entitled to the assumption of truth,'" such that they fail to "'state a claim to relief that is plausible on its face.'" Mem. at 10 (quoting Iqbal, 556 U.S. at 678–79). Though the Court agrees that Plaintiff's Statement of Facts occasionally lacks clarity and direction, the facts alleged therein, when construed liberally, are

14

nonetheless sufficiently specific to state a facially plausible claim for relief. In any event, even if the Court were inclined to dismiss Plaintiff's retaliation claims as failing to satisfy the Twombly and Iqbal pleading standards, it would take more than a cursory restatement of those standards to convince the Court to do so. Plaintiff's retaliation claims will therefore not be dismissed on those grounds.

Second, Defendants' Memorandum provides a number of reasons for dismissing a Title VI retaliation claim, had Plaintiff lodged such a claim. See Mem. at 11–12. However, because the Amended Complaint makes clear that Plaintiff's retaliation claims have been brought pursuant to the ADA and NYHRL, not Title VI, Am. Compl. at 3, 7, 11, much of Defendants' reasoning is inapplicable to the Court's present inquiry. Still relevant, however, are Defendants arguments related to the causal connection between Plaintiff's protected activity and Defendants' alleged adverse actions, namely that:

> [P]laintiff's [C]omplaint does not allege that the individual [D]efendants were parties to the 2009 DHR proceeding. There are no allegations that these [D]efendants were required to do anything because of the DHR proceeding. There are no allegations that the individual [D]efendants were even at the [University] in 2009. Moreover, the triggering event, a DHR complaint filed against [the University] in 2009, is far too attenuated from the 2014 events to infer retaliatory intent.

Mem. at 11–12 (citations omitted). Those points are echoed in the Durand Declaration, which states that "Plaintiff's [A]mended [C]omplaint does not include an amended fact statement as to how or why the individual [D]efendants were aware of the 2009 discrimination complaint, the alleged award, or that [Plaintiff's] settlement imposed any duty of care that these [D]efendants breached." Durand Decl. ¶ 19.

15

"A plaintiff may establish a causal connection between the protected activity and the adverse . . . action 'either (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment.'" McGuire-Welch v. House of the Good Shepherd, 219 F. Supp. 3d 330, 345 (N.D.N.Y. 2016) (quoting Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009)). However, for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Neither Plaintiff's Amended Complaint nor his Statement of Facts provide any direct evidence of retaliatory animus on the part of Ryan, Russel, or Arnold. And the nearly five years that expired between the 2009 DHR proceeding and Defendants' allegedly infringing behavior undermine any potential claims of an indirect causal connection. Id. (citing various cases finding that a temporal proximity of greater than or equal to three months was not sufficient to imply an indirect causal connection). Therefore, Plaintiff's retaliation claims against Ryan, Russel, and Arnold are dismissed.

### 3. Remaining Claims Against Ryan and Arnold

Plaintiff's only remaining claim is that Ryan and Arnold "ma[de] a medical decision on [Plaintiff's] life without a medical degree or a New York license by over[r]uling a licen[s]ed doctor's order." Am. Compl. 3, 11. Plaintiff points to no statute, caselaw, or legal theory that would render such a claim cognizable, nor is the Court aware of any. As a result, Plaintiff's remaining claims against Ryan and Arnold will also be dismissed.

V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 20), together with the Statement of Facts (Dkt. No. 1 at 12–13), is accepted for filing and deemed the operative pleading; and it is further

**ORDERED**, that Defendant's Second Motion (Dkt. No. 24) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that all of Plaintiff's claims are **DISMISSED with prejudice** except for (1) Plaintiff's NYHRL claims for compensatory relief as brought against Defendants in their individual capacities; and (2) Plaintiff's ADA claims for compensatory and injunctive relief as brought against Defendants in their official capacities; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:   September 07, 2018
         Albany, New York

Lawrence E. Kahn
U.S. District Judge